**ALABAMA ELECTRIC COOPERATIVE, INC., Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent,**

**Alabama Power Company and The Southern Company, Intervenors.**

No. 19403.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 7, 1965.

Decided Nov. 24, 1965.

Mr. Bennett Boskey, Washington, D. C., with whom Mr. Joseph Volpe, Jr., Washington, D. C., was on the brief, for petitioner.

Mr. Ellwood L. Englander, Asst. Gen. Counsel, Securities and Exchange Commission, with whom Messrs. Philip A. Loomis, Jr., Gen. Counsel, and David Ferber, Solicitor, Securities and Exchange Commission, were on the brief, for respondent. Mr. Robert W. Cox, Atty., Securities and Exchange Commission, also entered an appearance for respondent.

Mr. John Bingham, Birmingham, Ala., of the bar of the Supreme Court of Alabama, pro hac vice, by special leave of court, with whom Mr. Ezekiel G. Stoddard, Washington, D. C., was on the brief, for intervenors.

Before EDGERTON and WILBUR K. MILLER, Senior Circuit Judges, and McGOWAN, Circuit Judge.

WILBUR K. MILLER, Senior Circuit Judge.

On January 21, 1965, The Southern Company, a registered holding company,[1] and certain of its public utility subsidiaries including Alabama Power Company, filed with the Securities and Exchange Commission a joint application-declaration seeking authorization for the issue by Alabama Power and the purchase by Southern of 140,000 shares of common stock for $14,000,000, the proceeds to be used by Alabama Power in its 1965–1966 construction program. Exemption from the provisions of Section 6(a) of the Public Utility Holding Company Act[2] was claimed under that portion of Section 6(b) which is reproduced in the margin.[3]

Alabama Electric Cooperative, Inc., which provides electric energy to certain municipalities and local cooperatives in the general area in which Alabama Power operates, petitioned for leave to intervene. It alleged that Alabama Power intended to use a part of the proceeds of the stock sale for construction of lines and other facilities which would duplicate its own, and asked that the Commission condition its authorization so as to prevent such use of any part of the proceeds of the stock sale. Alabama Electric also requested a hearing.

On June 1, 1965, the SEC denied Alabama Electric's petition for intervention and for a hearing, and authorized the issuance and sale of stock as proposed by Southern and Alabama Power. It pointed out that such issue and sale are solely for the purpose of financing the business of Alabama Power and have been expressly authorized by the Public Service Commission of Alabama,[4] the state in which Alabama Power is organized and doing business; thus, exemption under Section 6(b) of the Act was granted. The SEC held the Cooperative's intervention and a hearing would not be in the public interest.

The Cooperative petitions for review. It says SEC erred in refusing to consider conditioning its authorization of the stock sale by providing that no part of the proceeds thereof should be used to dupli-

1. Under the Public Utility Holding Company Act, 15 U.S.C. § 79 *et seq.*, 49 STAT. 838.

2. Section 6(a) 15 U.S.C. § 79f(a), is in pertinent part as follows:
   "Except in accordance with a declaration effective under section 7 and with the order under such section permitting such declaration to become effective, it shall be unlawful for any registered holding company or subsidiary company thereof, by use of the mails or any means or instrumentality of interstate commerce, or otherwise, directly or indirectly (1) to issue or sell any security of such company * * *."

3. " * * * The Commission by rules and regulations or order, subject to such terms and conditions as it deems appropriate in the public interest or for the protection of investors or consumers, shall exempt from the provisions of subsection (a) the issue or sale of any security by any subsidiary company of a registered holding company, if the issue and sale of such security are solely for the purpose of financing the business of such subsidiary company and have been expressly authorized by the State commission of the State in which such subsidiary company is organized and doing business * * *."

4. As Alabama Power Company is incorporated in and operates only in Alabama, the proposed financing was first submitted to the Alabama Public Service Commission, which conducted an evidentiary hearing. Alabama Electric, permitted to intervene, participated in the hearing, introduced evidence, and made the same arguments it advances here.
   The State Commission found that the proposed financing (which included the stock issue involved here) "Is for lawful objects within the corporate purposes of petitioner [Alabama Power], viz: * * * acquiring or constructing plants, properties, permanent improvements, extensions and additions to petitioner's property to be used in its public utility business * * *." It further found the financing to be "compatible with the public interest," as well as "necessary, appropriate for and consistent with the proper performance * * * of [petitioner's] service to the public * * *." Accordingly, the proposed financing was approved, without the restriction on the use of the proceeds requested by Alabama Electric.

cate Alabama Electric's facilities. This was within the power of the Commission, it contends, because Section 6(b) of the Act directs the SEC to grant exemption in some circumstances, "subject to such terms and conditions as it deems appropriate in the public interest or for the protection of investors or consumers * * *." In making this argument, the Cooperative necessarily equates the statutory term "public interest" with that term as it is used in licensing or certification statutes. Therein lies the fallacy of its contention.

As the Commission said, "Words like 'public interest' and the interest of 'investors or consumers,' though of wide generality, take their meaning and definition from the substantive provisions and purposes of the Act." Sections 6 and 7 deal with the issuance of securities by a registered holding company or its subsidiary and the SEC's jurisdiction thereunder is to control such issuance and regulate the terms and conditions of those securities which are approved. The Cooperative would have it that the SEC's jurisdiction extends further: that it may, and should, forbid construction of some of the new facilities which the Alabama Commission has authorized, thus superseding the state agency in its normal regulation of public utility operations.

▇▇▇ The purpose of the Public Utility Holding Company Act, as shown by its legislative history, was to supplement state regulation—not to supplant it. Nowhere in the Act is there a provision granting to the SEC the sort of regulatory power attributed to it by the petitioner. Indeed, the congressional choice of that Commission to administer the Act is, in itself, the strongest sort of proof that the general purpose of the Act was to regulate the issuance of securities which could not be reached by state commissions.

Section 10 of the Act, 15 U.S.C. § 79j, which has to do with the approval of the acquisition of securities, is helpful in the consideration of Section 6(b). Subsection (e) is as follows:

"(e) The Commission, in any order approving the acquisition of securities or utility assets, may prescribe such terms and conditions in respect of such acquisition, including the price to be paid for such securities or utility assets, as the Commission may find necessary or appropriate in the public interest or for the protection of investors or consumers."

This section serves to confirm our conviction that the language of Section 6(b) upon which petitioner relies, has the restricted meaning attributed to it by the SEC.

The Cooperative's appeal from the Alabama Commission's order, which is now pending, does not prevent the SEC from relying upon the State Commission's approval in granting exemption. The Act directs the SEC to proceed when the state commission has approved. We note, however, that the SEC's Rule 24(c) (2) provides that, where a proposed transaction is to be carried out pursuant to the express authorization of a state commission, the SEC's authorization granted pursuant thereto is automatically "revoked and terminated" if the state commission's action is subsequently "modified, revoked or otherwise terminated." This rule affords adequate protection to the successful appellant from the state commission's order.

We hold that the SEC acted properly and with commendable restraint in refusing to exercise the enlarged jurisdiction which the Cooperative urged upon it.

Affirmed.