## BLACKSTONE VALLEY ELECTRIC CO.

v.

## PUBLIC UTILITIES COMMISSION.

### No. 83–556–M.P.

Supreme Court of Rhode Island.

Jan. 17, 1985.

Peter J. McGinn/Robert M. Schacht, Tillinghast, Collins & Graham, Providence, Robert G. Bleakney, Jr., Boston, Mass., for petitioner.

Dennis J. Roberts II, Atty. Gen., Jane McSoley, Sp. Asst. Atty. Gen., for respondent.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on a petition for a writ of certiorari filed by the Blackstone Valley Electric Company (Blackstone), to review the legality and reasonableness of a decision and order of the Public Utilities Commission (commission) in docket No. 1701 issued October 27, 1983. We affirm.

Blackstone, a Rhode Island corporation, is a retail electric company doing business in the State of Rhode Island. It is a wholly owned subsidiary of Eastern Utilities Associates (EUA), a holding company whose principal place of business is Boston, Massachusetts. In addition to its ownership of Blackstone, EUA is the sole owner of Eastern Edison Company (Edison), which furnishes retail electric service to customers in eastern Massachusetts, and of Eastern Utilities Association Service Company (EUASC), a service company that, under contract, furnishes managerial, professional, and technical services to members of the EUA system. Both Blackstone and Edison purchase substantially all their power from Montaup Electric Company (Montaup), a wholesale generating company that is wholly owned by Edison. Montaup also sells power to nonaffiliated customers in interstate commerce, and its rates are fixed by the Federal Energy Regulatory Commission (FERC). All of the aforementioned companies are subject to the jurisdiction of the Securities Exchange Commission (SEC) under the Public Utility Holding Company Act of 1935 (PUHCA) codified at 15 U.S. C.A. § 79– 79z–6 (1981).

In the case before us, the commission considered and found unreasonable the charges assessed by EUASC to Rhode Is-

land ratepayers who were customers of Blackstone. In reaching its decision, the commission reaffirmed its ruling in *Re: Blackstone Valley Electric Co.*, docket No. 1605, May 20, 1982. In docket No. 1605 the commission said:

"[W]e are not investigating the rate by which the company purchases power from an interstate or wholesale supplier, an inquiry which lies outside the scope of our jurisdiction. Instead, we are examining the contract between a service corporation and its affiliated companies so as to determine whether the expense arising therefrom and assessed to an affiliate is reasonable. Hence, we do not view the [Federal Energy Regulatory Commission] as having preempted the authority of this commission to review this question."

In short, the commission determined that it had jurisdiction to scrutinize those cost allocations between affiliated companies that had an impact upon intrastate rates charged to the company's customers.

Blackstone takes the position that the commission acted outside its authority because the federal Public Utility Holding Company Act of 1935 precludes the commission from analyzing and disallowing the particular expenses in question. Blackstone argues that the state is preempted by the act from determining factors used in allocating costs among members of a public-utility holding-company system that is organized and operated under the act. We disagree.

The Circuit Court's opinion in *Alabama Electric Cooperative, Inc. v. Securities and Exchange Commission*, 353 F.2d 905 (D.C.Cir.1965), indicates that Blackstone's position on the preemption issue is incorrect. There the court said that "[t]he purpose of the Public Utility Holding Company Act, as shown by its legislative history, was to supplement state regulation—not to supplant it." *Id.* at 907. In *Alabama* the court held that the SEC had acted with commendable restraint when it declined to issue orders in an area on which the state utilities commission had already acted. *Id.* The court suggested that the SEC's refusal to exercise enlarged jurisdiction was consistent with the general purpose of the act to defer to the state's scheme of regulation in this area. *Id.*

Under the act, the SEC has the responsibility to regulate the issuance of securities that cannot be reached by state commissions. Nowhere in the act is there a provision granting to the SEC the power to supersede state commissions in their normal regulation of public utility operations. *Id.; see also Municipal Electric Association of Massachusetts v. Securities and Exchange Commission*, 413 F.2d 1052, 1057 (D.C.Cir.1969); *American Power & Light Co. v. Securities and Exchange Commission*, 158 F.2d 771, 778 (1st Cir. 1946).

In *Narragansett Electric Co. v. Burke*, 119 R.I. 559, 564, 381 A.2d 1358, 1361 (1977), this court noted that the doctrine of preemption, which is based on the Supremacy Clause, permits Congress to "adopt as federal policy the state scheme of regulation." *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947). It is clear that Congress intended states to have the authority under the act to regulate those areas outside the scope of the SEC's expertise in regulating the issuance of securities. It is worth noting in this regard that the regulation of electric utilities has traditionally been performed by the states.

We hold that nothing in the Public Utility Holding Company Act of 1935 preempts the authority of the state's commission under G.L.1956 (1977 Reenactment) § 39–3–30 to investigate contracts, arrangements, purchases, or sales between

affiliated companies and disallow such transactions if found to be unreasonable.

Accordingly, we conclude that the commission acted within its authority in reviewing the charges for services rendered by the EUASC to Blackstone and disallowing them because they were not proven to be reasonable.

Therefore, the petition for certiorari is denied. The writ heretofore issued is quashed, and the papers of this case are remanded to the Public Utilities Commission with our decision endorsed thereon.