

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL.
ATTORNEY GENERAL.

November 20, 1975

The Honorable Ron Clower, Chairman
Senate Subcommittee on Consumer Affairs
Texas State Senate
Austin, Texas 78711

Cited and approved by

City of San Antonio v.
San Antonio ISD
535 SW 2d 671 Ct. Civ. Appeals
El Paso, 1976
550 SW 2d 262,266 (Tex. 1976)
Texas Supreme Court

Opinion No. H-741

Re:  Whether a municipality
may grant automatic
rate adjustments to a
Dear Senator Clower;                    public utility.

You have requested our opinion regarding the authority of a municipality to grant automatic rate adjustments to a public utility.

The authority to regulate public utilities in Texas is delegated by the Legislature to general law cities pursuant to article 1119, V. T. C. S., which provides in part:

> The governing body of all incorporated cities
> and towns in this State incorporated under the
> General Laws thereof shall have the power to
> regulate, by ordinance, the rates and compen-
> sation to be charged by all persons, companies,
> or corporations using the streets and public
> grounds of said city or town, and engaged in
> furnishing water, gas, telephone, light, power,
> or sewerage service to the public, . . .

Similar authority is granted to home rule cities by article 1175 (12), V. T. C. S., which permits such cities:

> . . . To determine, fix and regulate the charges,
> fares or rates of any person, firm or corporation
> enjoying or that may enjoy the franchise or exer-
> cising any other public privilege in said city and
> to prescribe the kind of service to be furnished by
> such person, firm or corporation, and the manner
> in which it shall be rendered, and from time to
> time alter or change such rules, regulations and
> compensation; . . .

You ask whether a municipality's grant of automatic rate adjustments to a public utility contravenes the Supreme Court's Texas Power & Light Co. v. City of Garland decision, 431 S. W. 2d 511 (Tex. Sup. 1968), which you advise "holds that a city cannot surrender or contract away its bargaining power. "

The specific issue of Garland (whether an ordinance enacted subsequent to the award of a franchise to a utility operated as an unconstitutional deprivation of the property rights vested by the original grant) is not relevant to the present inquiry. But the authorities cited in Garland bear on the question of a municipality's authority to permit automatic rate adjustments.

When a municipality regulates rates charged by a public utility, it is performing a governmental function not delegable by the municipality. Kousal v. Texas Power & Light Co. , 179 S. W. 2d 283 (Tex. Sup. 1944). The Supreme Court has most recently reaffirmed this position in City of Galveston v. Hill, S. W. 2d 103 (Tex. Sup. 1975):

> The management of income and revenue from
> the Galveston Wharves, the setting of rates and
> the determination of policies, being governmental
> functions, . . . . cannot be surrendered, delegated
> or bartered away. Id. at 105.

A reserved power of regulation is implied in every franchise notwithstanding the specific terms of the agreement. Dallas Railway Co. v. Geller, 271 S. W. 1106 (Tex. Sup. 1925).

An automatic rate adjustment is a device by which the municipality allows a public utility to increase or decrease utility rates automatically without a formal hearing so long as the increase or decrease corresponds in a designated manner with an identified operating expense. Automatic rate adjustments, whether authorized by ordinance or by franchise, are generally grouped according to the character of the operating expense that triggers the rate change. The most common include adjustments based upon the cost of purchased gas, cost of fuel, and cost of service. See Foy, Cost Adjustment in Utility Rate Schedules, 13 Vand. L. Rev. 663 (1960). You have presented no specific examples of contracts, but we assume the fuel adjustment clauses in which you are interested conform to this definition and are based on costs which are controlled by the impersonal forces of the marketplace rather than by the discretion of the utility.

In our opinion a city's enactment of a rate ordinance which includes an automatic adjustment clause based on ascertainable costs controlled by the impersonal forces of the marketplace may be a lawful exercise of the municipality's rate regulation power.   Such an ordinance establishes a rate schedule which changes in response to fluctuations in operating costs. It sets current rates and provides an objective formula for computing future rates.   See City of Norfolk v.   Virginia Electric & Power Co. , 90 S. E . 2d 140 (Va. 1955); City of Chicago v. Illinois Commerce Commission, 150 N. E. 2d 776 (Ill. 1952); Foy, Cost Adjustment in Utility Rate Schedules, 13 Vand. L. Rev. 663 (1960).

## SUMMARY

A municipality does not necessarily surrender its governmental power when it grants an automatic rate adjustment to a public utility pursuant to an adequate objective formula if it is based upon readily ascertainable costs controlled by the impersonal forces of the market-place.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee