381 A.2d 1358.

## The Narragansett Electric Company *vs.* Edward F. Burke *et al.*

DECEMBER 30, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C.J.    This case is before us on a petition for a writ of certiorari filed by the Naragansett Electric Company (Narragansett) pursuant to G.L. 1956 (1969 Reenactment) §39-5-1 to review the December 1, 1976 decision and order of the Public Utilities Commission. (PUC).

Narragansett, whose retail rates are regulated by PUC, is a retail distribution electric utility company serving approximately 250,000 customers in Rhode Island. It is a wholly owned subsidiary of the New England Electric System (NEES), a public utility holding company incorporated in Massachusetts and registered under the Public Utility Holding Company Act of 1935, 15 U.S.C. §79 et seq. (1970). Narragansett purchases electrical power from the New England Power Company (NEPCO), a Massachusetts corporation also wholly owned by NEES. Because NEPCO is an interstate wholesale supplier of electricity, its rates are subject to regulation by the Federal Power Commission (FPC) under the Federal Power Act. 16 U.S.C. §824 et seq. (1970).

In November 1975, NEPCO filed a rate increase request (designated Rate R-10) with the FPC. On December 1, 1975 Narragansett filed with the PUC a notice of price adjustment (Narragansett Rate PPCA No. 5) pursuant to the purchased power cost adjustment provisions (R.I. PUC No. 407) enacted by the PUC.[1] Narragansett requested that PUC allow increased rates, subject to possible refund, to cover the increased cost of obtaining power which resulted from the R-10 rate filed by NEPCO with the FPC. Both the NEPCO and Narragansett filings requested an effective date of January 1, 1976. On December 30, 1975, the PUC entered an order suspending the January 1976 effective date to permit investigations and a hearing. On December 31, 1975, the FPC issued an order which accepted the R-10 rate for filing, suspended it for 2 months, and allowed it to become effective, subject to refund and before investigation of its reasonableness, on March 1, 1976. The FPC order noted that "the proposed increases in rates have not been shown to be just and reasonable and may be unjust, unreasonable or otherwise unlawful." In a series of suspension orders, the PUC suspended Narragansett Rate PPCA No. 5

---

[1]The Purchased Power Cost Adjustment provisions (R.I. PUC No. 407) state in pertinent part:

"The prices contained in the applicable rates of the Company are subject to adjustment for changes in the wholesale cost of purchased power. The cost of purchased power referred to herein is the Primary Service for Resale Rate of the New England Power Company as from time to time on file and effective with the Federal Power Commission, exclusive of any adjustment for cost of fuel applicable thereto.

"1. The Purchased Power Cost Adjustment applicable to any change in the wholesale price of purchased power shall be an amount (computed to the nearest thousandth of a cent) equal to the ratio that the increase or decrease in the cost of purchased power bears to the sales by the Company, in the calendar year immediately preceding the effective date of the change in the supplier's Primary Service for Resale Rate.

* * *

"3. The operation of this Purchased Power Cost Adjustment clause is subject to all powers of suspension, investigation and other regulatory authority of the Public Utilities Commission.

for the full 9-month statutory suspension period from the March 1, 1976 effective date of the R-10 rate.

During this 9-month period, the PUC conducted public hearings. Narragansett presented testimony and exhibits outlining the effect of NEPCO's R-10 rate on Narragansett's financial structure. Thereafter, the PUC requested legal memoranda from the parties on the issue of whether the PUC had the authority under §39-3-30[2] to investigate the reasonableness of the R-10 contract rate. After consideration, the PUC decided that it did have such authority, and hearings on this issue were held between August and November of 1976.

On December 1, 1976, the PUC issued its final decision and order. The PUC first acknowledged that it was without jurisdiction to set the rate at which NEPCO sells electric power to Narragansett. The PUC ruled that it could, nevertheless, investigate the reasonableness of the costs underly-

---

[2]General Laws 1956 (1969 Reenactment) §39-3-30 reads as follows:

"Investigation and order as to transaction between affiliates. — The division shall have full power and authority to investigate any such contract, arrangement, purchase or sale, and if the division, after notice and hearing, shall find such contract, arrangement, purchase or sale to be unjust or unreasonable, the division may make such reasonable order relating thereto as the public good requires. In any such investigation the burden shall be on the public utility or affiliate to prove the reasonableness of any such contract, arrangement, purchase or sale with, from or to an affiliate. If the public utility shall fail to satisfy the division of the reasonableness of any such contract, arrangement, purchase or sale, the division may disapprove the same, or disallow payments thereunder or such part of any such payment as the division shall find to be unjust or unreasonable, or both disapprove and disallow as aforesaid. No payment disallowed by the division shall be capitalized or included as an operating cost of the public utility in the fixing of rates or as an asset in fixing a rate base. If, in any such investigation, the public utility or affiliate shall unreasonably refuse to comply with any request of the division for information with respect to relevant accounts and records, whether of such public utility or any affiliate, any portion of which may be applicable to any transaction under investigation, so that such parts thereof as the division may deem material may be made part of the record, such refusal shall justify the division in disapproving the transaction under investigation and disallowing payments in pursuance thereof."

ing the R-10 rate and could prevent Narragansett from passing through to its retail customers any portions of those costs which were "strikingly" or "glaringly" unreasonable.

The PUC considered four specific costs issues underlying NEPCO's R-10 rate: (1) NEPCO's cost of common equity (2) NEPCO's capital structure (3) NEPCO's cash working capital requirements, and (4) the proper rate-making treatment of losses incurred by NEPCO when it abandoned construction of a generating station. Based on its evaluation of the reasonableness of NEPCO's costs in these four areas, the PUC ruled that Narragansett should recover approximately $5,300,000 of the $9,300,000 annual increase in the cost of power occasioned by the R-10 rate. The PUC ordered Narragansett to effectuate rates reflecting the allowable amount for electricity consumed on or after December 1, 1976, such rates being subject to refund upon completion of FPC proceedings. The present petition for certiorari followed. Narragansett contends that the PUC lacks jurisdiction to inquire into the reasonableness of NEPCO's wholesale rate to Narragansett because the Federal Power Act preempted the authority of state commissions to investigate interstate prices. We agree.

I

The doctrine of preemption is based upon the supremacy clause. U.S. Const. Art. VI. When Congress legislates in an area within the federal domain, it may, if it chooses, take for itself all regulatory authority over the subject, share the task with the states, or adopt as federal policy the state scheme of regulations. *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447, 1459 (1947). The question in each case is the intent of Congress. *Id.*

The Federal Power Act extended federal regulatory power to the "sale of electric energy at wholesale in interstate commerce * * * ." 16 U.S.C. §824(b)(1970). The Supreme Court has noted that the legislative history of the

Federal Power Act evidences a "constant purpose to protect rather than to supervise authority of the states." *Connecticut Light & Power Co.* v. *FPC*, 324 U.S. 515, 525, 65 S. Ct. 749, 754, 89 L. Ed. 1150, 1158 (1945). However, the Court has determined that Congress, in enacting the Federal Power Act, intended to vest exclusive jurisdiction in the FPC to regulate interstate wholesale utility rates. *FPC* v. *Southern California Edison Co.*, 376 U.S. 205, 216, 84 S. Ct. 644, 651, 11 L. Ed.2d 638, 646 (1964).

> "What Congress did was to adopt the test developed in the *Attleboro* line which denied state power to regulate a sale 'at wholesale to local distributing companies' and allowed state regulation of a sale at 'local retail rates to ultimate consumers.' " *Id.* at 214, 84 S. Ct. at 650-51, 11 L. Ed.2d at 646, quoting *Illinois Natural Gas Co.* v. *Central Illinois Pub. Serv. Co.*, 314 U.S. 498, 504, 62 S. Ct. 384, 386, 86 L. Ed. 371, 375 (1942).

The result is a blend of state-federal regulation, each with exclusive authority in its respective field. We conclude, therefore, that jurisdiction to determine the reasonableness of the wholesale rate charged by NEPCO to Narragansett rests exclusively with the FPC.

## II

The PUC is the administrative agency charged with the duty of regulating the intrastate rates of public utilities within the State of Rhode Island. *Narragansett Elec. Co.* v. *Harsch*, 117 R.I. 395, 401-02, 368 A.2d 1194, 1199 (1977). Under §39-3-11, the PUC is authorized to conduct hearings to investigate the propriety of proposed rate changes and to make such orders with regard to a proposed rate as may be just. In fixing just rates, the PUC must protect both the right of the public utility company and its investors to an opportunity to earn a return reasonably sufficient to maintain the utility's financial integrity, *Rhode Island Consumers' Council* v. *Smith*, 111 R.I. 271, 293, 302 A.2d 757, 770 (1973), and the consumer's right to pay a rate which ac-

curately reflects the cost of service rendered plus a reasonable profit. *Narragansett Elec. Co.* v. *Harsch, supra* at 429, 368 A.2d at 1213.

Among the essential factual findings which the PUC must make in carrying out this duty is a determination of the operating expenses of the utility. *Rhode Island Consumers' Council* v. *Smith, supra* at 281, 302 A.2d at 764; 1 Priest, *Principles of Public Utility Regulation* 45 (1969). As the Court of Appeals for the District of Columbia stated in *Mississippi River Fuel Corp.* v. *FPC,* 163 F.2d 433, 437 (D.C. Cir. 1947):

> "Expenses (using that term in its broad sense to include not only operating expenses but depreciation and taxes) are facts. They are to be ascertained, not created, by the regulatory authorities. If properly incurred, they must be allowed as part of the composition of the rates. Otherwise, the so-called allowance of a return upon the investment, being an amount over and above expenses, would be a farce."

When the operating expense being investigated by the PUC is one incurred through a contract of the utility company with an affiliate, the burden is on the utility to establish the reasonableness of that expense. Section 39-3-30. If unpersuaded, the PUC may disallow all or part of the requested rate change.

However, the Supreme Court has said that a reasonable rate is that rate filed with or fixed by the FPC. *Montana-Dakota Util. Co.* v. *Northwestern Pub. Serv. Co.,* 341 U.S. 246, 251, 71 S. Ct. 692, 695, 95 L. Ed. 912, 919 (1951). "[N]ot even a court can authorize commerce in the commodity on other terms." *Id.* at 251, 71 S. Ct. at 695, 95 L. Ed. at 919 (1951). Thus the rate increase in the cost of electricity to Narragansett, filed and bonded by NEPCO, constitutes an actual operating expense and must be so viewed by the PUC. *See City of Chicago* v. *Illinois Commerce Comm'n,* 13 Ill. 2d 607, 616, 150 N.E. 2d 776, 781 (1958); *United Gas Corp.* v. *Mississippi Pub. Serv. Comm'n,* 240

Miss. 405, 442, 127 So.2d 404, 420 (1961); *Citizen Gas Users Ass'n* v. *Public Util. Comm'n,* 165 Ohio St. 536, 538, 138 N.E.2d 383, 384 (1956).

In a case presenting the precise issue which we now decide, the Mississippi Supreme Court reversed the state regulatory commission's disallowance of a portion of an interstate wholesale supplier's rate filed with the FPC and effective subject to bond for refund. The state commission had refused to allow the FPC filed and bonded wholesale rates for natural gas as an operating expense to the local distributor of the gas on the ground that the rates were speculative and contingent because the FPC had not yet found them to be just and reasonable. The Mississippi court noted that the FPC had a backlog of several thousand filed and bonded rate increase requests which would take many years to hear and adjudicate. Nevertheless, the court held that, because the FPC has exclusive jurisdiction over interstate wholesale rates, the state commission was precluded from disallowing the filed rates as an operating expense. *United Gas Corp.* v. *Mississippi Pub. Serv. Comm'n, supra,* at 443, 127 So.2d at 420. *Accord, City of Chicago* v. *Illinois Commerce Comm'n, supra* at 616, 150 N.E.2d at 781; *Citizen Gas Users Ass'n* v. *Public Util. Comm'n, supra,* at 538, 138 N.E.2d at 384.

The Mississippi court also rejected the view adopted by the state commission that, because the interstate and intrastate companies were affiliates, the commission could disregard the FPC rates. The court noted that "[t]here is nothing to suggest that the FPC will not closely scrutinize this relationship, for the statutory purpose of protecting the public and consumers from exploitation." *United Gas Corp.* v. *Mississippi Pub. Serv. Comm'n, supra* at 442, 127 So. 2d at 420. *Accord, City of Chicago* v. *Illinois Commerce Comm'n, supra* at 615, 150 N.E.2d at 780.

We conclude, therefore, that for the purpose of fixing intrastate rates, the PUC must treat NEPCO's R-10 interstate rate filed with the FPC as a reasonable operating expense.

Narragansett has met the burden of proof prescribed by §39-3-30 by establishing that the price of the contract with its affiliate is the FPC filed and effective rate. However, because the FPC has not finally determined the interstate rate, the PUC has the power to require Narragansett to post bond to reimburse the individual consumers for any increased costs which may be disallowed to NEPCO by the FPC. *See United Gas Corp.* v. *Mississippi Pub. Serv. Comm'n, supra* at 444, 127 So. 2d at 421.

The PUC, under the purchased power cost adjustment clause, may choose to adjust Narragansett's existing retail rates to reflect the changed cost of interstate power, but it need not do so. The Purchased Power Cost Adjustment Provisions specify that the operation of the clause is subject to "all powers of suspension, investigation and other regulatory authority" of the PUC. The commission, therefore, may treat the proposed rate increase as it treats other filings for charged rates under §39-3-11 and investigate the overall financial structure of Narragansett to determine whether the company has experienced savings in other areas which might offset the increased price for power. The manner which a fuel adjustment clause is treated is an administrative matter where there is broad latitude for the exercise of sound discretion. *Narragansett Elec. Co.* v. *Kennelly*, 88 R.I. 56, 85, 143 A.2d 709, 726 (1958). Therefore, we do not order the PUC to automatically adjust the retail rates in accordance with the purchased power cost adjustment clause. Rather, we remand the case to the PUC with the direction that no matter what method it adopts in considering Narraganasett's proposed rate increase, it must treat the FPC filed and bonded purchase price to NEPCO as an actual operating expense.

## III

Because we have decided that Narragansett's purchased power costs must be treated as an actual operating expense, we do not reach the constitutional issue of whether failure to treat it as such would constitute confiscation of Nar-

ragansett's property in violation of the Fourteenth amendment to the United States Constitution and article I, section XVI, of the Rhode Island Constitution.

There remains for our consideration Narragansett's contention that, because the PUC suspended the purchased power cost adjustment filing for 9 months after institution of the new rates by NEPCO, it is entitled to extraordinary retroactive relief. While conceding that retroactive relief is generally unavailable in rate cases, Narragansett points to our statement in *New England Tel. & Tel. Co.* v. *Public Util. Comm'n,* 116 R.I. 356, 358 A.2d 1 (1976), that "a rate schedule which represents a deprivation of due process either in its inability to provide a fair return or in the grossly excessive time it took to correct good faith errors of the commission in arriving at the new rates would certainly entitle the company to some sort of extraordinary relief. *Id.* at 392, 358 A.2d at 22.

Narragansett argues that there are two factors present which differentiate this case from the typical rate case in which extraordinary relief is unavailable: the PUC's lack of jurisdiction to inquire into the reasonableness of NEPCO's R-10 rate, and the failure of the PUC to rule on Narragansett's August 17, 1976 motion for extraordinary relief. Narragansett asserts that these factors evidence a "totally unreasonable" course of action by the PUC which deprived the company of due process and justifies extraordinary relief. We do not agree.

Although we hold today that the PUC had no authority to inquire into the reasonableness of NEPCO's R-10 rate, nothing in the record suggests that the commission approached this task with bad faith. The fact that the commission misjudged the effect to be accorded the R-10 rate filed with the FPC in no way supports the contention of Narragansett that the commission's action in this regard was "totally unreasonable."

We also find that the PUC's failure to rule on the August 17 motion was not so arbitrary or unreasonable as to con-

stitute a denial of due process. In its August 17 motion before the PUC, Narragansett requested that, in view of its "serious financial condition," it be allowed the full amount of its requested rate increase pending final resolution of the case. On September 3, 1976, Narragansett filed a petition for certiorari in this court pursuant to §39-5-1[3] requesting similar relief. Section 39-5-2 requires that when a petition for certiorari is filed, the PUC must transmit the record of the case to this court. The PUC's compliance with this requirement necessarily interfered with its consideration of the case. On October 1, 1976, this court issued an order denying the requested relief. On December 1, 1976, after return of the record, the PUC issued its final order, thus rendering the August 17 motion for interim relief moot.

In view of the statutory requirement, we do not believe that the delay by the PUC in ruling on the motion was that type of "grossly excessive" delay which we have indicated may entitle the utility company to retroactive relief. It is a fundamental rule that utility rates are exclusively prospective in nature. *See New England Tel. & Tel. Co.* v. *Public Util. Comm'n, supra* at 388, 358 A.2d at 20; *Rhode Island Consumers' Council* v. *Smith,* 111 R.I. 271, 292, 302 A.2d 757, 770 (1973). Additionally, there is a presumption that current commission orders are valid. Therefore, absent extraordinary circumstances, the utility company must bear the risk of loss inherent in the well-known lag accompanying the making of rate changes. *New England Tel. & Tel.*

---

[3]General Laws 1956 (1969 Reenactment) §39-5-1 reads as follows:

"Judicial review. — Any person aggrieved by a decision or order of the commission may, within seven (7) days from the date of such decision or order, petition the supreme Court for a writ of certiorari to review the legality and reasonableness of said decision or order. The petition for a writ of certiorari shall fully set forth the specific reasons for which it is claimed that the decision or order is unlawful or unreasonable. Chapter 35 of title 42 shall not be applicable to appeals from the commission. The procedure established by this chapter shall constitute the exclusive remedy for persons and companies aggrieved by any order or judgment of the commission; provided, however, any person aggrieved by a final decision or order of the administrator may appeal therefrom to the superior court pursuant to the provisions of §42-35-15."

*Co.* v. *Public Util. Comm'n, supra* at 388-92, 358 A.2d at 20-22. We hold that Narragansett has not established that it is entitled to extraordinary retroactive relief.

The decision of the PUC is quashed in part. The records certified to this court are remanded to the PUC with instruction to the PUC to review the evidence and testimony in the present record as supplemented by such further testimony as may be offered by the parties or by the PUC's own direction. On the basis of this record so supplemented, the PUC is directed to make further findings and orders in harmony with this opinion.

*Edwards & Angell, Edward F. Hindle, Deming E. Sherman,* for petitioner.

*Julius C. Michaelson,* Attorney General, *R. Daniel Prentiss,* Special Asistant Attorney General, *Roberts & Wiley, Incorporated, Dennis J. Roberts II, Bruce G. Tucker,* (on behalf of Rhode Island Consumers' Council), for respondents.