Eastern Edison Company vs. Department of
Public Utilities.

Suffolk. November 5, 1982. — March 4, 1983.

Present: Hennessey, C.J., Liacos, Abrams, Lynch, & O'Connor, JJ.

*Jurisdiction*, Public utilities. *Public Utilities*, Federal Power Act, Pur-
chased power cost adjustment.

Where a retail electric utility company's fuel charges were based solely on
    the cost of power purchased from its wholesale supplier at a rate on file
    with the Federal Energy Regulatory Commission, the Department of
    Public Utilities was without authority to refuse to pass through these
    purchased power costs to the utility's retail customers in an ap-
    propriate fuel charge under G. L. c. 164, § 94G. [299-302]
The record in proceedings before the Department of Public Utilities on an
    electric utility's application for fuel cost adjustments under G. L.
    c. 164, § 94G, demonstrated that the department's decision was a final
    disallowance of the disputed costs, rather than, as claimed by the
    department, a deferral of the utility's opportunity to pass these costs
    through to its customers pending investigation by the Federal Energy
    Regulatory Commission of the reasonableness of the rate charged by
    the utility's wholesale supplier. [302-304]
In acting on an electric utility's application for a fuel cost adjustment
    under G. L. c. 164, § 94G, to reflect the cost of power purchased by
    the utility from an interstate wholesale supplier, the Department of
    Public Utilities must accord the same deference to a wholesale rate ac-
    cepted by the Federal Energy Regulatory Commission for filing as it
    would to a rate which the commission has approved after a hearing.
    [304-306]

Two civil actions commenced in the Supreme Judicial
Court for the county of Suffolk on December 17, 1981, and
June 18, 1982, respectively.

The cases were reported by *O'Connor*, J.

*Robert G. Bleakney, Jr.* (*David A. Fazzone* with him) for the plaintiff.

*E. Michael Sloman*, Assistant Attorney General (*Thomas A. Barnico*, Assistant Attorney General, with him) for the defendant.

*Samuel Huntington & Thomas G. Robinson*, for Massachusetts Electric Company, amicus curiae, submitted a brief.

HENNESSEY, C.J.    Eastern Edison Company (Eastern Edison) appeals pursuant to G. L. c. 25, § 5, from three decisions of the Department of Public Utilities (department).  Eastern Edison challenges the department's refusal in each case to approve an increased charge to Eastern Edison's retail customers, based on an increase in the cost of power Eastern Edison purchases from its wholesale supplier, its wholly-owned subsidiary, Montaup Electric Company (Montaup).  The increase in Montaup's wholesale charges to Eastern Edison reflected Montaup's attempt to recoup its investment in the abandoned Pilgrim Nuclear Unit No. 2 project (Pilgrim II).  The cases were reserved and reported on a consolidated basis by a single justice of this court.

Eastern Edison is a retail electric utility company distributing electricity to customers in southeastern Massachusetts.  Montaup is a public utility engaged in the generation, transmission, and sale at wholesale of electricity in interstate commerce.  Both parties agree that Montaup's wholesale rates charged to Eastern Edison are, therefore, regulated exclusively by the Federal Energy Regulatory Commission (FERC), under the Federal Power Act, 16 U.S.C. §§ 824(a), (b), and 824d (1976 & Supp. V 1981). *New England Power Co.* v. *New Hampshire*, 455 U.S. 331 (1982). *FPC* v. *Southern Cal. Edison Co.*, 376 U.S. 205 (1964). *Montana-Dakota Utils. Co.* v. *Northwestern Pub.*

*Serv. Co.*, 341 U.S. 246 (1951). *Public Utils. Comm'n* v. *Attleboro Steam & Elec. Co.*, 273 U.S. 83 (1927). Montaup invested in Pilgrim II and the abandonment of the project left it with a share of the unrecovered costs. It submitted a revised rate schedule to the FERC, proposing a new rate, "M-7," for service to several customers, including Eastern Edison, to allow it to recover its unamortized investment in Pilgrim II. FERC Docket No. ER-81-749-000 (November 3, 1981). The FERC accepted the M-7 rate for filing, and suspended it for one day, allowing it to become effective, subject to refund, on November 5, 1981. It noted that it suspended the rate for only one day because "preliminary review of Montaup's filing suggests that the proposed rates may not yield excess revenues." The FERC also ordered that a public hearing be held concerning the justness and reasonableness of the rate. Thus, pending final decision by the FERC, Montaup's rates charged to Eastern Edison include a surcharge attributable to Montaup's Pilgrim II investment. The Department of Public Utilities notes that it is "involved in and represented by the Attorney General" in the FERC proceeding.

Since 1974, Eastern Edison (then called Brockton Edison Company) has included within its rate schedules a Purchased Power Cost Adjustment Clause (PPCA), authorized under G. L. c. 164, § 94G, providing for an adjustment in Eastern Edison's charges to retail customers to reflect fluctuations in the cost of power Eastern Edison purchases from its supplier, Montaup.[1] In 1978, Eastern Edison's PPCA was modified to provide for a "single quarterly forward-looking" adjustment in retail rates.[2] Accordingly, shortly before the beginning of each quarter, Eastern Edison files an application with the department for approval of a re-

---

[1] Brockton Edison Company, D.P.U. 17895 (1974).

[2] Brockton Edison Company, D.P.U. 18125-QQ (1978).

vised fuel charge pursuant to its PPCA. The application is then set for hearing and decision under G. L. c. 164, § 94G. The decisions appealed from reviewed Eastern Edison's applications for the quarters commencing December 1, 1981 (D.P.U. 1006-E), March 1, 1982 (D.P.U. 1006-F), and June 1, 1982 (D.P.U. 1006-G). For each quarter, the proposed fuel adjustment charge reflected the M-7 rate charged to Eastern Edison by Montaup to recover Montaup's investment in the Pilgrim II power plant project.

While D.P.U. 1006-E and D.P.U. 1006-F were being heard, a general retail rate proceeding of Boston Edison Company (Boston Edison), D.P.U. 906, was being litigated before the department. Boston Edison had a substantial investment in Pilgrim II. However, unlike those of Montaup, Boston Edison's rates are subject to the exclusive jurisdiction of the department. One of the issues in the Boston Edison case was the extent to which Boston Edison would be allowed to recover its investment in the abandoned Pilgrim II project.

In D.P.U. 1006-E, the department stated: "Since . . . the manner and extent to which the Pilgrim II costs are to be assumed by the ratepayers is currently under review and subject to the scrutiny of the Department, we decline to pass upon their propriety here. We will therefore exclude that portion of the charge from the Company's fuel adjustment clause for the present time." In a footnote, the department noted that it was participating in the FERC proceeding on Montaup's M-7 rate request, and that "[t]his proceeding should provide a forum to address our concerns over the continued collection of any Pilgrim II costs pending the outcome of our review." Similarly, D.P.U. 1006-F referred to the Boston Edison proceeding, and found "that the best treatment of the portion of [Eastern Edison's] fuel charge attributable to abandonment costs at the Pilgrim II nuclear facility is to continue to exclude . . . [them] pending the results of the Department's on-going investigation and

review." The department also noted that Eastern Edison had appealed the department's earlier ruling in D.P.U. 1006-E to this court. In both D.P.U. 1006-E and D.P.U. 1006-F, the department ordered Eastern Edison to accumulate the disallowed charges in account 186. In D.P.U. 1006-E, it was specified that this was to be done "pending a resolution as to the treatment of such costs."

In D.P.U. 1006-G, decided after the Boston Edison case, the department issued a decision allowing Eastern Edison "to recover [Montaup's] costs related to Pilgrim II to the same extent as allowed in previous Department decisions (Boston Edison Company, D.P.U. 906 [1982] and Commonwealth Electric Company, D.P.U. 956 [1982])."[3] The department ordered that Eastern Edison's "fuel charge for this quarter and for succeeding quarters include charges for Pilgrim II costs calculated in accordance with the Department's Interim Order in this case." That order referred to the department's decision in Boston Edison Company, D.P.U. 906 (1982), and specified that Eastern Edison should file with the department a calculation of its Pilgrim II expenses disallowing costs incurred after July 1, 1980, and AFUDC. The department requested "a final accounting . . . once actual figures are known." The department also ordered Eastern Edison to continue to accumulate the disallowed charges in account 186.

The reservation and report of the single justice presents two issues for our consideration. "Whether, in retail rate proceedings devoted solely to the determination of Eastern's purchased power cost adjustment factor under its [PPCA], where Eastern's cost of purchased power was based entirely on [Montaup's] effective rates . . . on file with the F.E.R.C., the Department had jurisdiction: (1) To defer decision on whether Eastern would be allowed to recover a portion of

---

[3] In these two decisions, the department concluded that the utilities could not recover the equity portion of allowance for funds used during construction (AFUDC) or the project costs incurred after July 1, 1980, on Pilgrim II. Boston Edison Company, 46 P.U.R. 4th 431 (Mass. D.P.U. 906, 1982).

such purchased power costs pending the results of another proceeding before the Department involving another utility and ordering Eastern to calculate and accumulate said amount in a deferred debit account [D.P.U. 1006-E and D.P.U. 1006-F]; and (2) To disallow thereafter recovery by Eastern of a portion of its actual purchased power costs [D.P.U. 1006-G]." Although both parties presumably agreed to this statement of the issues, and both adopt it in their briefs, the department proceeds to argue its case based on a different characterization of the issues before us. The department now concedes that Eastern Edison's increased wholesale fuel expenses based on Montaup's FERC-filed rate are "legitimate operating expenses that are ultimately recoverable from the ratepayers in some form," and argues that its decisions did not deny recovery of a portion of these expenses on the authority of Boston Edison, D.P.U. 906, but rather deferred Eastern Edison's opportunity to pass these expenses through to its customers under its PPCA "pending the conclusion of the FERC investigation of the reasonableness of the Montaup rate."

We conclude that the department's actions interfered with the FERC's exclusive jurisdiction to set rates for electricity transmitted and sold at wholesale in interstate commerce. We further conclude that, even if the department's decisions were deferrals pending the conclusion of the FERC investigation, as claimed by the department, the decisions exceeded the department's jurisdiction. We accordingly remand the case to the single justice, with directions to enter a judgment reversing the department's decisions and to order relief as provided in this opinion.

We first consider the regulatory framework within which these cases arise. In *Public Utils. Comm'n* v. *Attleboro Steam & Elec. Co.*, 273 U.S. 83 (1927), the United States Supreme Court held that the commerce clause, U.S. Const., art I, § 8, precludes State regulation of rates charged for electricity transmitted in interstate commerce. In response to *Attleboro,* Congress enacted the Federal Power Act, now codified at 16 U.S.C. § 824 (1976 & Supp. V 1981), and the

Natural Gas Act, now codified at 15 U.S.C. § 717 (1976 & Supp. V 1981).[4] The Federal Power Act applies to "the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided [in the Federal Power Act] shall not apply to any other sale of electric energy." 16 U.S.C. § 824(b)(1) (Supp. V 1981). The Supreme Court has determined that the Federal Power Act "adopt[s] the test developed in [*Attleboro*] which denied state power to regulate a sale 'at wholesale to local distributing companies' and allowed state regulation of a sale at 'local retail rates to ultimate consumers.'" *FPC* v. *Southern Cal. Edison Co.*, 376 U.S. 205, 214 (1964), quoting *Illinois Natural Gas Co.* v. *Central Ill. Pub. Serv. Co.*, 314 U.S. 498, 504 (1942). Thus, the power to establish rates for interstate sales at wholesale of electric energy is vested exclusively in the FERC. *New England Power Co.* v. *New Hampshire*, 455 U.S. 331, 338 (1982). *FPC* v. *Southern Cal. Edison Co.*, *supra* at 214-216. See *Northern Natural Gas Co.* v. *State Corp. Comm'n.*, 372 U.S. 84, 90-91 (1963).

Wholesale rates charged under the Federal Power Act must be "just and reasonable." 16 U.S.C. 824d (a) (1976). Utilities regulated by the act are required to file rate schedules with the FERC, which has authority to investigate and modify new schedules, and to suspend their operation for up to five months pending hearings and decision. 16 U.S.C. § 824d (b), (d), and (e) (1976 & Supp. V 1981). Since the FERC has exclusive power to establish reasonable rates for utilities subject to its jurisdiction, a utility subject to FERC jurisdiction "can claim no rate as a

---

[4] Although we are concerned with the FERC's jurisdiction under the Federal Power Act, this opinion refers to several cases considering FERC jurisdiction under the Natural Gas Act. The Supreme Court has said that "the relevant provisions of the two statutes 'are in all material respects substantially identical.'" *Arkansas La. Gas Co.* v. *Hall*, 453 U.S. 571, 577 n.7 (1981), quoting *FPC* v. *Sierra Pac. Power Co.*, 350 U.S. 348, 353 (1956).

legal right that is other than the filed rate, whether fixed or merely accepted by the [FERC], and not even a court can authorize commerce in the commodity on other terms. . . . [T]he right to a reasonable rate is the right to the rate which the [FERC] files or fixes . . . ." *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251 (1951). See *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 576 (1981).

We are presented with the question whether the fact that Montaup's wholesale rate was filed with the FERC affected the department's authority to disallow Eastern Edison's retail fuel charges under its PPCA based on that rate. General Laws c. 164, § 94G (*b*), as appearing in St. 1981, c. 375, § 4, provides that "[t]he department may approve an itemized fuel charge in rates filed by electric companies to reflect changes in prudently incurred reasonable costs of fuels and power purchased . . . in accordance with the company's fuel charge rate schedule." The department is required to hold a hearing to review the proposed fuel charge, and the burden is on the utility "to demonstrate the reasonableness of energy expenses sought to be recovered through the fuel charge." However, the Federal Power Act precludes department review of the reasonableness of the FERC-filed rate Montaup charged Eastern Edison. *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., supra.* See *People's Counsel of D.C. v. Public Serv. Comm'n*, 444 A.2d 975, 976 (D.C. App. 1982); *Chicago v. Illinois Commerce Comm'n*, 13 Ill. 2d 607, 616 (1958); *Citizens Gas Users Ass'n v. Public Utils. Comm'n*, 165 Ohio St. 536 (1956). We conclude that Montaup's FERC-filed rate must be considered a prudently incurred reasonable power cost within the meaning of G. L. c. 164, § 94G.

Courts which have considered this question have agreed that the Federal Power Act requires that a utility's costs based on an FERC-filed rate must be treated as a reasonable operating expense for purposes of setting an appropriate retail rate. *Public Serv. Co. v. Public Utils. Comm'n*, Colo.    ,    -    (1982) (644 P.2d 933, 939-940 [Colo. 1982]). *United Gas Corp. v. Mississippi Pub. Serv.*

*Comm'n,* 240 Miss. 405, 437-443 (1961). *Northern States Power Co.* v. *Hagen,* 314 N.W.2d 32, 38 (N.D. 1981). *Citizens Gas Users Ass'n* v. *Public Utils. Comm'n, supra. Narragansett Elec. Co.* v. *Burke,* 119 R.I. 559, 563-568 (1977), cert. denied, 435 U.S. 972 (1978). Otherwise, a State utilities commission could review the reasonableness of the FERC-filed wholesale rate in a proceeding establishing retail rates, in violation of the Federal Power Act. See *Northern Natural Gas Co.* v. *State Corp. Comm'n,* 372 U.S. 84, 90-93 (1963); *Northern States Power Co.* v. *Hagen, supra.* In addition, as a practical matter, "we cannot overlook that [the company] is required by the FERC order to pay a fixed wholesale rate for electricity . . . ." *Northern States Power Co.* v. *Hagen, supra* at 37. See *Public Serv. Co.* v. *Public Utils. Comm'n, supra* at      (*supra* at 940).

In *Narragansett Elec. Co.* v. *Burke, supra* at 567-568, the Rhode Island Supreme Court concluded that, while the State utilities commission had to consider the cost of electricity to Narragansett based on its supplier's federally filed rate as an actual operating expense, it was not required to adjust Narragansett's retail rates to reflect the higher wholesale costs under Narragansett's PPCA. Rather, the commission was free to "treat the proposed rate increase as it treats other filings for charged rates under [State statute] and investigate the overall financial structure of Narragansett to determine whether the company has experienced savings in other areas which might offset the increased price for power." *Id.* at 568. The court based its holding on the State utilities commission's broad discretion over the operation of the PPCA under the applicable State statutes and the PPCA provisions. Similarly, in *Public Serv. Co.* v. *Public Utils. Comm'n, supra* at      (*supra* at 941), the Colorado Supreme Court concluded that "although the [State commission] is legally obligated to consider the [FERC approved] charge as a reasonable operating expense . . . our decision does not mandate that the [State commission] must include the . . . charge as a flow-through item" under the

company's purchased gas adjustment clause. The court relied on administrative discretion over the gas adjustment clause under State law.

This aspect of the holdings in *Narragansett Elec. Co.* and *Public Serv. Co.*, does not affect our analysis under G. L. c. 164, § 94G. Those cases arose under general rate making statutes, which both courts construed to confer broad discretion on the State utilities commissions to regulate the operation of PPCAs. See Colo. Rev. St. § 40-3-102 (1973); R.I. Gen. Laws § 39-3-30 (1977). The State commissions had authority to consider factors other than the companies' fuel costs in setting rates under those statutes. By contrast, G. L. c. 164, § 94G, is a specialized provision concerned with setting a separate, periodic fuel charge in utility rates according to a fixed formula, based solely on a utility's reasonable wholesale power costs. See *Western Mass. Elec. Co. v. Department of Pub. Utils.*, 373 Mass. 227, 232-234 (1977); *Trustees of Clark Univ. v. Department of Pub. Utils.*, 372 Mass. 331, 336 (1977); *Consumers Org. for Fair Energy Equality, Inc. v. Department of Pub. Utils.*, 368 Mass. 599, 612-613 (1975). The fuel charge formula, or PPCA, must be approved by the department. Once it is approved, G. L. c. 164, § 94G, is designed to allow a utility to make timely adjustments through a fuel charge to reflect fluctuations in its reasonable power costs, without the necessity of resorting to a full scale rate proceeding. See *Trustees of Clark Univ. v. Department of Pub. Utils.*, *supra*; *Consumers Org. for Fair Energy Equality, Inc. v. Department of Pub. Utils.*, *supra.* There is no indication that Eastern Edison's PPCA was not properly approved by the department, or that the formula used was unreasonable.

Although we have previously considered only the original version of G. L. c. 164, § 94G, St. 1974, c. 625, § 1, the 1981 amendment to the statute did not make any relevant changes in the nature and scope of fuel adjustment charge proceedings of the type involved here. The department agrees that the issues in these cases arise from "retail rate

proceedings devoted solely to the determination of Eastern Edison Company's [PPCA], where [Eastern's] cost of purchased power was based entirely on the effective rates of its wholesale supplier . . . on file with the [FERC]."

We conclude that, because Eastern Edison's fuel charges were based solely on its wholesale power costs attributable to Montaup's FERC-filed rate, and the Federal Power Act precludes department review of the reasonableness of Montaup's rate, the department should not have refused to pass these power costs through to Eastern Edison's customers in an appropriate fuel charge under G. L. c. 164, § 94G.

We next examine the record to determine the nature of the department's actions. In D.P.U. 1006-E and D.P.U. 1006-F, the department stated that it was excluding that portion of Eastern Edison's proposed fuel charge attributable to Montaup's surcharge based on its Pilgrim II costs, pending *the department's decision* in the Boston Edison case. It did not suggest that the charges were excluded pending an FERC decision. It referred to the FERC only to note that the FERC had allowed Montaup's rate, including the surcharge, to go into effect after a one-day suspension, and, in D.P.U. 1006-E, to comment that the FERC hearing on the M-7 rate would give it an opportunity to express its views on the treatment of the Pilgrim II costs "pending the outcome of our review."

In D.P.U. 1006-G, the department stated that Eastern Edison would be allowed to recover its purchased power costs to the same extent as allowed in Boston Edison, D.P.U. 906 (1982),[5] ordered that its "fuel charge for this quarter and for succeeding quarters include charges for Pilgrim II costs calculated in accordance with [the decision in Boston Edison]," and requested "a final accounting" of the approved costs. This language had the effect of finally disposing of Eastern Edison's request for recovery of all of its costs attributable to Montaup's M-7 rate. The department specified the amount of recovery to be allowed for this and suc-

---

[5] See note 3, *supra.*

ceeding quarters, and requested a final accounting. There is no indication that its treatment of the costs was anything less than final, much less that it was disallowing the costs pending an FERC decision. The sole mention of the FERC was that it had permitted the M-7 rate to go into effect. We note that in D.P.U. 1006-E and D.P.U. 1006-F, the department clearly stated that it was disallowing the costs pending its decision in Boston Edison. If the department also intended the result in D.P.U. 1006-G to be temporary, we see no reason why it failed to similarly express that intent in its decision.

We are also influenced by the fact that the single justice's report refers to the department's jurisdiction to "disallow" the disputed costs. The report presumably reflects the parties' understanding of the issues before us, and was adopted by both parties in stating the issues in their briefs.

The department argues that it had authority under G. L. c. 164, § 94G, and the provisions of Eastern Edison's PPCA to defer recovery through the fuel adjustment charge of the disputed costs. The argument misses the mark. We are here concerned with the nature of the department's actions, not the scope of its authority. The only portion of its decision in D.P.U. 1006-G the department refers us to in support of its argument that the decision was a deferral pending a final FERC decision is the fact that it ordered Eastern Edison to continue to accrue the disallowed costs in account 186. This order is ambiguous, and suggests no connection with an FERC proceeding. We cannot accept the department's contention that we should conclude from this order that its decision, couched in final terms, was in fact a deferral pending FERC investigation. We note that the department is subject to the State Administrative Procedure Act, G. L. c. 30A, § 14 (7), providing for judicial review of agency decisions. *Boston Edison Co.* v. *Department of Pub. Utils.*, 375 Mass. 1, 9, cert. denied, 439 U.S. 921 (1978). The department must also comply with G. L. c. 30A, § 11 (8), which states in part that "[e]very decision shall be in writing or stated in the record." This is necessary in order

that the reviewing court may determine what the agency did. *New York Cent. R.R.* v. *Department of Pub. Utils.*, 347 Mass. 586, 592-593 (1964).

The record demonstrates that the department deferred resolution of Eastern Edison's claims until after its decision in Boston Edison, and then denied recovery of the disputed costs in D.P.U. 1006-G. The implication of the department's decision in D.P.U. 1006-G was that, since Boston Edison had been decided, the department had determined the appropriate treatment of Pilgrim II costs, and would have Eastern Edison adjust its fuel charge in conformity with its view. Its actions constituted a final disallowance of the costs.

In light of the plain finality of the department's decision, as well as the concession of the department, noted *supra*, that it had no power to disallow Eastern Edison's claims with finality at this time, the issues reported by the single justice are meaningful and dispositive. Negative answers are required for both of the issues so presented.

Further, the finality of the department's decision makes inapposite its argument that it was entitled to defer recovery pending a final FERC decision. Its decision simply was not a deferral. Nevertheless we address this argument of the department because all parties have addressed it in their briefs, and so far as we know, the FERC decision is as yet not final and thus the issue of the power to defer its decisions may well be a current and recurring issue.

We conclude that the fact that the FERC rate was not final does not change its effect on the department's authority under G. L. c. 164, § 94G. *Montana-Dakota Utils. Co.* v. *Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251 (1951), established that the FERC rate is the only legal rate "whether fixed *or merely accepted* by the [FERC]" (emphasis supplied). Consequently, the department must accord the same deference to a rate which the FERC has accepted for filing as it would to a rate which the FERC has approved after a hearing. It cannot defer recovery by Eastern Edison on the ground that a final FERC decision is

pending, because under *Montana-Dakota Utils. Co.* the fact that the FERC allowed the rate to go into effect, not final FERC approval, is the decisive factor. See *United Gas Corp.* v. *Mississippi Pub. Serv. Comm'n,* 240 Miss. 405, 439-443 (1961); *Narragansett Elec. Co.* v. *Burke,* 119 R.I. 559, 567 (1977). We note that the FERC could have suspended Montaup's rate increase for five months pending hearings, under 16 U.S.C. § 824d (e) (1976), but concluded that more than a one-day suspension was not necessary. It would be inconsistent with the FERC's jurisdiction under the Federal Power Act if the department could suspend recovery of a rate which the FERC has decided not to suspend.

The department urges that its decisions maintain rate payer uniformity in Massachusetts pending a final FERC decision, which might follow the department's approach in Boston Edison, D.P.U. 906 (1982). These concerns do not justify the department's actions interfering with the FERC's exclusive jurisdiction to determine Montaup's wholesale rates. "Not the federal but the state regulation must be subordinated, when Congress has so plainly occupied the regulatory field." *Northern Natural Gas Co.* v. *State Corp. Comm'n,* 372 U.S. 84, 93 (1963).

We turn now to the question of relief. Eastern Edison requests us to direct the department to allow Eastern Edison to recover all of its purchased power costs based upon Montaup's FERC-filed rate. In addition, Eastern Edison argues that it is entitled to recover with interest the portions of these costs which the department excluded in D.P.U. 1006-E, D.P.U. 1006-F, and D.P.U. 1006-G.

As these issues were not reported to us by the single justice, we assume that the parties would be able to agree on the appropriate relief in this case. Eastern Edison has advanced reasonably persuasive arguments in support of its request for retroactive relief, but it is still not clear that G. L.

c. 164, § 94G, authorizes such relief in these cases.[6] The department did not address the issue in its brief. We, therefore, remand the cases to the single justice, with directions to answer the reported questions in the negative and to enter a judgment providing that the department's decisions are to be reversed, and directing the department to issue an order allowing Eastern Edison to recover hereinafter its purchased power costs based on Montaup's FERC-filed rates, and to decide the issue of Eastern Edison's request for retroactive relief.

*So ordered.*

---

[6] We note that it has been represented to us, apparently without dispute, that, if the FERC ultimately disallows all or a portion of Montaup's rates based on its Pilgrim II losses, Eastern Edison will refund to its customers all charges which were attributable to Montaup's disallowed rate. G. L. c. 164, § 94G (*b*). See *United Gas Corp.* v. *Mississippi Pub. Serv. Comm'n,* 240 Miss. 405, 444 (1961); *Northern States Power Co.* v. *Hagen,* 314 N.W.2d 32 (N.D. 1981); *Narragansett Elec. Co.* v. *Burke,* 119 R.I. 559, 568 (1977).