[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In these consolidated appeals, the Connecticut Light and Power Company ("CLP") challenges decisions of the Department of Public Utility Control ("DPUC") excluding from an energy adjustment clause ("EAC") to its rates, costs for replacement power related to the retirement of the Connecticut Yankee ("CY") nuclear power facility.
The plaintiff, CLP, is a public service company, as defined in Connecticut General Statutes § 16-1, providing retail electric service to approximately one million Connecticut customers. The defendant, DPUC, is a State of Connecticut agency charged by statute with the regulation and supervision of public service companies, and the establishment of the level and structure of rates. See General Statutes §§ 16-1, 16-19b
and 16-19e.
The defendant, Office of Consumer Council ("OCC"), is also a CT Page 3045 party to this case and supports the position of the DPUC. The OCC is authorized, pursuant to § 16-2a, to advocate for consumer interests in public utility matters.
The exclusion of the plaintiff's replacement power costs ("RPC") for the CY retirement amounts to approximately eighteen million dollars as of April, 1997 and up to four million dollars a month thereafter.
CLP as a regulated utility is entitled to recover from its customers all prudently incurred operating expenses. See General Statutes § 16-19e(a)(4); Connecticut Light Power Co. v.DPUC, 216 Conn. 627 (1990). The DPUC through rate proceeding, pursuant to § 16-19, forecasts the amount of the utility's operating and capital costs, and establishes rates that provide a reasonable opportunity for the utility to recover its costs.
The volatility of energy costs during the 1970's caused the legislature to adopt fuel adjustment mechanisms. The fossil Fuel Adjustment Clause ("FFAC") in 1974 and the Generation Utilization Adjustment Clause ("GUAC") in 1975 protected the utilities from fuel price changes and changes in the nuclear mix of fuels.[1]
The FFAC and GUAC adjustments were applied in a mechanical way to adjust utility rates. The legislature through Public Act 1995, No.95-43[2] authorized DPUC to use an EAC rather than the FFAC or GUAC consistent with the interests articulated in §16-19.
In a filing dated June 6, 1997, CLP requested approval of an EAC for the billing period of July 1, 1997 through December 31, 1997. The proposed EAC rate included replacement power costs for CY incurred after its December 4, 1996 retirement. The DPUC had in an earlier docket #96-08-01 directed that the EAC exclude costs associated with the outages of the Millstone and CY nuclear power facilities.[3] CLP excluded the Millstone and CY outage costs in its June 16, 1997 EAC request, but included RPC for
If the department, after notice and hearing, determines that the adoption of an energy adjustment clause would protect the interests of ratepayers of an electric company, ensure economy and efficiency in energy production and purchase by the electric company and achieve the objectives set forth in subsection (a) of section 16-19 and in section 16-19e better than would the continued operation of a fuel adjustment clause and a generation utilization adjustment clause, the CT Page 3046 department shall approve an energy adjustment clause to be superimposed upon the existing rate schedule of the electric company. The department shall design any such energy adjustment clause to reflect cost-efficient energy resource procurement and to recover the costs of energy that are proper for rate-making purposes and for which the department has not authorized recovery through base rates. These costs, reflecting prudent and efficient management and operations, may include, but are not limited to, the costs of oil, gas, coal, nuclear fuel, wood and other fuels, and energy transactions with other utilities, nonutility generators or power pools, all or part of the cost of conversation and load management, and the gross earnings tax imposed by section 12-264 on the revenues from the energy sources subject to the energy adjustment clause. The department shall design the energy adjustment clause to provide for recovery of energy costs prudently incurred by an electric company in accordance with section 16-19e. Notwithstanding the provisions of section 16-19, the department shall make any changes to an energy adjustment clause in accordance with the provisions of subsection (d) and (g) of this section. An energy adjustment clause approved pursuant to this section shall apply to all electric companies similarly affected by the costs which form the basis for the adjustment clause.
CY after its December 4, 1996 retirement. The plaintiff in this action is not disputing the costs related to the pre-retirement shutdown.
In a June 6, 1997 Procedural Order in this docket. DPUC directed CLP to revise its EAC rate calculation to remove all CY's RPC including those incurred after the facilities retirement.
The DPUC thus suspended any recovery of RPC for CY until a final decision was issued by the Federal Energy Regulatory Commission. (See FERC Docket No. ER 97-913-000 in the matter of Connecticut Yankee Power Company). The FERC decision should address the issue of prudence of CLP management related to CY's retirement. In an interim decision dated October 15, 1997, DPUC reaffirmed the June procedural order and the each for June through December, 1997 with no recovery by EAC of the RPC for the CY retirement. The CLP appeal of this interim decision is before the Court in Docket No. 98-0492694. The DPUC's final decision in the § 16-19b(g) review of the CLP EAC was issued on December CT Page 3047 31, 1997. The CLP appeal of the final decision is Docket No. 98-0492697, filed on February 20, 1998.
The CLP appeals are filed pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§4-166 et seq. and 4-183. CLP is aggrieved by the DPUC decision excluding RPC for the CY retirement.
In its appeals, CLP raises four issues: (1) that the DPUC decisions constitute retroactive rate-making; (2) that the decisions are inconsistent with FERC's s exclusive jurisdiction and violate the supremacy clause of the United States Constitution; (3) that the decisions are inconsistent with other DPUC decisions without a reasoned basis for such departure and (4) that the decisions violate CLP's right to procedural due process of law.
"The standard of review of an agency decision is well established. Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases thatpresent pure questions of law, however, invoke a broader standardof review than is ordinarily involved in deciding whether, inlight of the evidence, the agency has acted unreasonably,arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Citations omitted; emphasis in original; internal quotation marks omitted.) Assn. ofNot-for-Profit Providers for the Aging v. Dept. of SocialServices, 244 Conn. 378, 389 (1998).
A consideration of the issues requires further review of the factual context in which they arise.
Connecticut Yankee is a nuclear generating facility which is owned and operated by Connecticut Yankee Atomic Power Company ("CYAPCO"). CY entered utility service in 1968 under a Nuclear Regulatory Commission operating license which did not expire until the year 2007. CLP owns 34.5% of CYAPCO and CLP affiliates own 14.5%. The remaining 51% is owned by other New CT Page 3048 England public utility companies.
Connecticut Yankee's power outlet was sold at wholesale under wholesale power contracts. The contracts provided for CLP to receive a 34.5% share of CY output, along with 34.5% share of its operating costs. CLP resold its power output from CY to its retail customers.
On December 4, 1996, the CYAPCO Board of Directors unanimously voted to permanently retire CY from service. FERC has jurisdiction over the CY wholesale contracts, decisions to retire such wholesale sources of power generation and the treatment of the resulting costs of such decisions. 16 U.S.C. § 824;Mississippi Power Light Co. v. Mississippi ex rel Moore,487 U.S. 354 (1988); Nantahala Power and Light Co. v. Thomburg,476 U.S. 953 (1986).
CYAPCO, on December 24, 1996, submitted to FERC for approval, new CY contract costs reflecting the wholesale rates following the CY retirement from service. The costs were increased by higher decommissioning costs resulting from the retirement of a nuclear facility prior to the expiration of its operating license. The CY costs were reduced by lower operating costs associated with the retired facility. FERC accepted CYAPCO's rate filing and permitted the new rates to become effective on March 1, 1997 subject to a refund obligation if such rates are later found by FERC to be more than just and reasonable.
DPUC intervened in the FERC proceedings alleging that CYAPCO's imprudence and mismanagement led to CY's early closure, resulting in a loss to retail customers at least through the term of the license in 2007. The FERC decision is pending.
The plaintiff's retroactive rate-making claim asserts that by excluding from the EAC the recovery of wholesale RPC pending the outcome of the CYAPCO's FERC wholesale rate proceedings is, in effect, a retroactive modification of the EAC. The DPUC answer to the charge is contained in an earlier decision establishing an
EAC for CLP. See Docket No. 95-07-05 entitled "DPUC Investigation of A Fully Tracking Energy Adjustment Clause For Electrical Companies" Decision, 10/8/96. The DPUC Decision stated:
The Department [DPUC] has determined that Energy Adjustment CT Page 3049 Clauses are in the best interest of ratepayers and the electrical companies at this time, and, specifically, that a fully-tracking clause is appropriate for CLP. However, the term fully tracking should not be construed as a simple pass through of energy costs. . . . In adopting the EAC's, the Department will continue its high level of scrutiny of energy costs and disallow those that do not meet the test of prudency.
(See Docket No. 95-07-05 entitled "DPUC Investigation of A Fully Tracking Energy Adjustment Clause For Electrical Companies" Decision, 10/8/96, pp. 33-34.)
The DPUC cites as the basis for its view the mandate of §16-19e(a)(5) which states "that the level and structure of rates charged customers shall reflect prudent and efficient management of the franchise operation. . . ."
Section 16-19b makes clear that the EAC is superimposed on the existing rate schedule of the utility. The DPUC's consideration of prudency finds authorization in § 16-19b, which in pertinent part also provides: "The department shall design any such energy adjustment clause to reflect cost-efficient energy resource procurement and to recover the costs of energy that are proper for rate-making purposes and for which the department has not authorized recovery through base rates." General Statutes 16-19b(c). Section 16-19e(a)(5) limits rates to those reflecting "prudent and efficient management."
The plaintiff cites The Connecticut Light and Power Co. v.Department of Public Utility Control, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535092 (June 9, 1995, Maloney, J.) for its claim that the EAC is a nondiscretionary formulaic application. However, that case was dealing with fuel adjustments of the FFAC and GUAC prior to the EAC and Public Act 1995, No. 95-47.
In deferring inclusion of the RPC for CY retirement until the FERC determination of the prudence issue, the DPUC has not exceeded its authority or engaged in retroactive rate-making. The review of prudence is directed by General Statutes § 16-9 and the EAC thus includes a prudence review. This is evident from the DPUC decision in Docket No. 95-07-05 when the consequence of nuclear outages on EAC's was considered. The I I CLP EAC's have not included RPCs from earlier nuclear outages involving the CT Page 3050 Millstone and CY facilities.
The plaintiff argues that the DPUC has exceeded its authority under § 16-19b(g) and 16-19b(c) CLP's claim is that such provisions allow DPUC to determine only two things: (1) whether the charges are the actual costs and (2) whether the EAC formula has been accurately applied. (Brief of Plaintiff, the Connecticut Light and Power Company, pp. 17-18.) This claim ignores the provisions of § 16-19e(a) limiting rates to those reflecting prudent and efficient management.
In considering the prudence of the RPC for the retirement of CY in the calculation of an EAC, the DPUC is acting within its express authority of § 16-19e. The exercise of such authority under the circumstances of this case is, however, in violation of the supremacy clause of the United States Constitution.[4] On that basis the plaintiff's appeal is sustained.
The DPUC does not dispute the exclusive jurisdiction of FERC over interstate wholesale rates. The preemptive nature of this federal authority is also conceded. (Brief of the Department of Public Utility Control, pp. 15-16). The DPUC argument asserts that federal preemption does not preclude state review of the prudence issue. This is the dispositive issue of the cases under the circumstances of these appeals, and is resolved in favor of the plaintiff CLP.
The authority of FERC is exclusive. See 16 U.S.C. § 824
(b); New England Power Company v. New Hampshire, 455 U.S. 331,340, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982).
The electricity generated by CY was sold at wholesale to its owners pursuant to FERC approved contracts. On December 24, 1996, following CY's retirement, CYAPCO submitted new contract costs to FERC. The new contract costs were accepted I by FERC on February 27, 1997, and became effective on March 1, 1997. The contract costs were subject to a refund obligation if FERC subsequently found they were more than just and reasonable in proceedings in which DPUC has intervened.
The statutory review of"prudence and efficient management" set forth in§ 16-19e(a) is encompassed within the review of reasonableness which is the exclusive province of FERC. See16 U.S.C. § 824 (b), 824d, 824d(a), (c), (d), (e) and 824e(a). CT Page 3051
FERC had the authority under 16 U.S.C. § 824d to suspend such rates for five months pending investigation of such filed rates. FERC declined to suspend such rates and accepted them subject to future refund. The pending investigation of such rates by FERC will determine the prudence of the decision to retire the CY nuclear facility.
The federal courts have adopted a "fixed rate" doctrine in general public utility cases. Louisville Nashville Railroad Co.v. United States. 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853
(1915); ATT v. Central Office Telephone. Inc., U.S.,118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). The rule provides that the duly filed rate is the only lawful charge and derivation from the fixed rate is not permitted upon any pretext.
The "fixed rate" rule was applied to power rates inMontana-Dakota Utilities Co. v. Northwestern Public Service Co.,341 U.S. 246, 251-252, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951) that case involving FERC's predecessor, the Federal Power Commission. The force and reach of the rule is revealed by theMontana-Dakota decision in which the dispute concerned allegations of fraudulent agreement between interlocking directorates of corporate power companies.
The United States Supreme Court held that the company complaining of fraud ". . . cannot separate what Congress has joined together. It cannot litigate in a judicial forum its general right to a reasonable rate, ignoring the qualification that it shall be made specific only by exercise of the Commission's judgment, in which there is some considerable element of discretion. It can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms." (Emphasis added.) Montana-DakotaUtilities Co. v. Northwestern Public Service Co., supra,341 U.S. 251. "We hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one." Id., 251-252. The fraud allegations, sufficient even to raise a presumption of fraud, were irrelevant. Id., 253.
The Supreme Court in Nantahala Power and Light Co. v.Thomburgh, 476 U.S. 953, 90 L.Ed.2d 943, 106 S.Ct. 2349 (1986) CT Page 3052 recognized " . . . that the filed rate doctrine applies not only to the federal court review at issue in Montana-Dakota, but also to decisions of state courts. In this application, the doctrine is not a rule of administrative law designed to ensure that federal courts respect the decisions of federal administrative agencies, but a matter of enforcing the Supremacy Clause." Id., 963.
In Nantahala,[5] the North Carolina Supreme Court was reversed in allowing a state agency ruling that a utility had purchased an unreasonably excessive amount of higher cost power, when FERC had determined the utility entitlement amount to lower cost power. Id., 972.
The exclusive jurisdiction vested by Congress in FERC is strictly enforced.
 [O]ur decisions have squarely rejected the view . . . that the scope of FPC jurisdiction over interstate sales of gas or electricity at wholesale is to be determined by a case by case analysis of the impact of state regulation upon the national interest. Rather, Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction, making unnecessary such case by case analysis.
Federal Power Com'n v. Southern California Edison Co.376 U.S. 205, 215-216,
84 S.Ct. 644, 651, 11 L.Ed.2d 638 (1964).
The scope of the "Fixed Rate"[6] doctrine is broader than its name applies. The doctrine is not limited to rates. Where the FERC has lawfully determined a rate, allocation or other matter, a state commission cannot take action that contradicts that federal determination. Mississippi Power Light Company v.Mississippi ex rel. Moore, 487 U.S. 354, 373-74 (1988);Nantahala, supra, 476 U.S. 962-66; Public Service Company of NewHampshire v. Patch, 1998 WL 950685, 1998 WL 823177 (1st Cir., December 3, 1998).
In the instant case, DPUC claims to be respecting the FERC jurisdiction by awaiting its determination of the reasonableness of the retirement decision by CYAPCO. However, the rates filed by CYAPCO with FERC and which are now in effect, have been CT Page 3053 effectively suspended by DPUC. FERC which specifically has the power to suspend such rates while an investigation is pending pursuant to 16 U.S.C. § 824d(e) elected not to do so. The DPUC decision contravenes the FERC decision in several respects: the filed rates for wholesale interstate power, the FERC reviewed power contracts, are not implemented as to CL P; the rates are suspended by DPUC; and, contrary to FERC, the DPUC has determined to disallow the change in rates reflective of the CY retirement.
The continuing vitality of the filed rate doctrine is evidenced in ATT v. Central Office TelephoneCo. ___ U.S. ___, 118 S.Ct. 1956, 1962, 141 L.Ed.2d 220 (1998). In ATT, the Supreme Court relied specifically on the doctrine to overturn a decision allowing state law claims, which though involving service and billing rather than rates, such determinations were preempted by the filed rate doctrine. See also Town of Norwood v. New England Power Company,23 F. Sup.2d 109 (D.Mass. 1998) (where the strict application of the filed rate doctrine to FERC rules precluded state law claims.)
The DPUC relies on a line of authority that wholesale rates do not preclude the state's authority to determine whether these costs should automatically be passed on to retail customers.Narragansett Electric Company v. Burke, 381 A.2d 1358,119 R.I. 559 (1977), cert denied, 435 U.S. 972, 98 S.Ct. 1619,56 L.Ed.2d 63 (1978); Eastern Edison Company v. Department of PublicUtilities Control, 446 N.E.2d 684, 388 Mass. 292 (1983). InNantahala, the Supreme Court ruled that the wholesale retail divergence would occur only if costs other than those relating from the purchase of FERC regulated power were to decrease. That is not the scenario presented in this case. The issue upon which DPUC holds up the FERC filed rate is the retirement decision of the CY nuclear facility, an issue which is solely within the FERC jurisdiction.
The appeal is sustained and the DPUC decision is vacated. The DPUC is ordered to reopen Docket No. 97-06-01 and add the CY RPC to the defendant CLP's Energy
Adjustment Clause.
McWEENY, J.